UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEROME EDWIN MONTGOMERY,

        Petitioner,

                              CASE NO. 2:06-CV-15758
v.                            HONORABLE JULIAN ABELE COOK, JR.

BARRY D. DAVIS,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Jerome Edwin Montgomery, a state inmate currently[1] incarcerated at the Newberry Correctional Facility in Newberry, Michigan, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petitioner was convicted by a jury in Genesee County Circuit Court of three counts of kidnapping, MICH. COMP. LAWS § 750.349, conspiracy to kidnap, MICH. COMP. LAWS § 750.159a, first-degree home invasion, MICH. COMP. LAWS § 750.110a, and receiving and concealing stolen property, MICH. COMP. LAWS § 750.535(2)(a). The state trial court sentenced Petitioner as a third-time habitual offender, MICH. COMP. LAWS § 769.11, to thirty to fifty years on the kidnapping convictions, a concurrent ten to twenty years on the receiving and concealing stolen

---

[1] When Petitioner originally filed his petition, he was incarcerated at the Chippewa Correctional Facility in Kincheloe, Michigan where Jeri Ann Sherry was the warden. Petitioner was subsequently transferred to the Newberry Correctional Facility where Barry D. Davis is the warden. The proper respondent in a habeas case is the petitioner's custodian, which in the case of an incarcerated habeas petitioner is the warden of the facility where the petitioner is incarcerated. *Edwards v. Johns*, 450 F.Supp.2d 755, 757 (E.D. Mich. 2006); Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts. Therefore, the Court substitutes warden Barry D. Davis in the caption.

property conviction, and a consecutive sentence of twelve to forty years on the home invasion conviction. Petitioner alleges that he is entitled to habeas relief because he was denied his right to an impartial jury in violation of the Sixth and Fourteenth Amendments. Respondent has filed an answer asserting that Petitioner is not entitled to habeas relief because the decision of the Michigan Supreme Court affirming his conviction was not contrary to clearly established Supreme Court precedent and did not involve an unreasonable determination of the facts in light of the evidence presented. The Court agrees, therefore, the petition for a writ of habeas corpus will be denied.

## I.  Background

This case arose from the robbery of a jewelry store in Novi, Michigan at which Deborah Harrington was the general manager. The prosecution argued that Petitioner, his brother Reginald Montgomery and others devised a plan under which they would force Ms. Harrington to accompany them to the jewelry store, have her unlock the doors and the safe and allow them to make off with valuable jewelry. In the process, the prosecution contended that Petitioner and his co-conspirators broke in to the Harrington's home, held Ms. Harrington, her husband Leonard Harrington and her son Reid Adomat hostage at gunpoint, stole items from the Harrington's home, and stole over a million dollars in jewelry from the store. Petitioner and his brother Reginald were tried jointly with separate juries.

Petitioner's defense was that the Harringtons were co-conspirators and involved in the plan to rob the jewelry store. In contrast, Reginald confessed to his involvement in kidnapping the Harringtons and holding them hostage in their home but not to taking Ms. Harrington to the jewelry store. Reginald's confession was admitted outside of the presence of Petitioner's jury.

The juries for Petitioner and Reginald began to deliberate on Friday, March 26, 2004.

Within three hours, Reginald's jury returned and convicted him on all counts charged: two counts of armed robbery, conspiracy to commit armed robbery, three counts of kidnapping, conspiracy to kidnap, first-degree home invasion, felon in possession of a firearm, possession of a firearm during the commission of a felony and carjacking. Petitioner's jury was still deliberating and the trial court decided to send them home for the weekend. The remaining facts that are relevant to Petitioner's single habeas issue were summarized by the Michigan Court of Appeals:

> Jerome's counsel requested that the jury be sequestered for the weekend, in light of the fact that information would be available through news sources regarding Reginald's convictions. The trial court denied counsel's request and allowed the jury to go home for the weekend after giving specific instructions.
>
> On March 29, 2004, Jerome's jury returned to deliberate. Subsequently, the trial court received two notes: one wanting to know what would happen if a decision could not be reached and, shortly after, a second note from a juror stating "At this point I feel I've heard too much outside information outside these deliberations that have prevented me from making a fair decision." Jury deliberations were suspended and the trial court brought the juror in to discuss the note. The juror explained:
>
>> When I went to work on Saturday, my boss is aware that I'd been on jury duty, and he's aware of the case just because it's been on the news and the newspapers and that. I've never went over any details. But he had-when he come in, he says, so you guys have made a decision, thinking that I was the other juror-jury. And he said wow, it only took you guys like two hours.
>
> The juror further stated that her boss had told her that Reginald was found guilty on all charges and that there was a confession made. The juror indicated that she stopped him at that time. She explained:
>
>> And it didn't - it didn't really change my decision, it just confirmed it to a point where I wouldn't be able to discuss it, or - because there are so many people with other opinions. And there's other things going on as well.
>
> Upon further questioning, the juror indicated that she had not provided the information to the other jurors. The trial judge asked the juror if, recognizing the oath, she could separate the information she received from the evidence, and could "continue to deliberate based upon the information received in this only, and set that

3

other information aside?" The juror responded "Personally, yes, but I feel there's other people that cannot." When the trial court further questioned this response, the juror indicated that she did not know if other jurors had outside information that she did, but that the jury was "breaking rules that [the trial court] implied." The juror then explained the jury was not following rules on sympathy and emotions, and that "they're not using common sense."

Jerome's counsel requested that the trial court declare a mistrial because it would be unfair for the jury to continue on with the information regarding Reginald. The trial court denied the request stating:

> I think the law presumes that jurors follow the instructions of the Court when it comes to out-of-court conduct. And I think what we learned from juror number nine confirms that, and that is she did not seek out this information. It came to her in an inadvertent way.
>
> She recognized the oath that she took to decide this case based solely upon the evidence presented in this case. She affirmed that even though this outside information had come to her, that her oath and the instructions compel her to honor her previous commitment, and to decide this case based upon the evidence presented in this trial and nothing else.
>
> I'm going to deny the motion for a mistrial....

Subsequently, after a request from counsel, the trial court explained to the juror why information found in newspapers does not meet the evidentiary standards and again instructed her not to reveal the information to the other jurors. The jury resumed deliberations and eventually reached a verdict finding Jerome guilty on three counts of kidnapping, conspiracy to commit kidnapping, first-degree home invasion, and receiving and concealing stolen property; Jerome was found not guilty on three counts of armed robbery and one count of car jacking.

*People v. Montgomery*, No. 255641, 255689, 2005 WL 3116520 *3-4 (Mich. Ct. App. Nov. 22, 2005).

On appeal, Petitioner claimed that the trial court erred in denying his motion for a mistrial, relying on cases holding that the Sixth and Fourteenth Amendments guarantee criminal defendants a fair and impartial jury. A majority of the appellate court panel decided that the state trial court had abused its discretion in denying Petitioner's motion for a mistrial because juror nine's knowledge

of the extraneous facts of co-defendant Reginald's confession and conviction impaired Petitioner's ability to receive a fair trial. *Id.,* * 4-6. The appellate court affirmed Petitioner's convictions for receiving and concealing stolen property but reversed his other convictions. Judge Saad dissented because he concluded that the trial court did not abuse its discretion in denying the motion for a mistrial:

> I dissent for several reasons. After being advised of the jury's decision in the companion case and of the alleged confession, juror number 9 appropriately reported this to the trial court and upon questioning by the trial judge, juror number 9 assured the court that she did not share this information with the other jurors and, importantly, she advised the court that this information did not affect her decision about the case. Juror number 9 further assured the court that she could set aside the outside information and base her decision solely on the evidence presented at trial. Moreover, the entire jury was properly instructed and the trial court properly reminded juror number 9 of her obligation to decide the case on the evidence presented at trial.
>
> Because this is a very close judgment call, on the record before us, I would not conclude that the trial court abused its discretion had the court granted a new trial, as I conclude that the court did not abuse its discretion in refusing to grant a new trial. Though we may have decided this issue differently, because of the deference granted the trial court by the abuse of discretion standard of review, I cannot conclude that the trial court abused his discretion and therefore, I would affirm the trial court's decision not to grant a new trial.

*Id.*, * 14-15.

Respondent filed an application for leave to appeal with the Michigan Supreme Court raising one issue:

> Did the Court of Appeals clearly err and cause material injustice by holding that the trial court abused its discretion by denying [Petitioner's] motion for mistrial based on a deliberating juror's inadvertent contact with her employer who stated that a codefendant had been convicted and had confessed?

The Michigan Supreme Court issued an order "reversing that portion of the Court of Appeals judgment that pertains to [Petitioner] for the reasons stated in the dissenting opinion" and reinstated

5

Petitioner's convictions for kidnapping, conspiracy to kidnap, and first-degree home invasion. *People v. Montgomery*, 474 Mich. 1098 (2006). The Michigan Supreme Court remanded the case to the Court of Appeals for consideration of issues raised by Petitioner but not previously addressed by the Court of Appeals. *Id.* The Michigan Court of Appeals subsequently denied Petitioner's remaining claims and affirmed his convictions. *People v. Montgomery*, No. 255641, 2006 WL 1185385 (Mich. Ct. App. May 4, 2006).

Petitioner then filed a timely petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 and raises the same issue he raised in the Michigan Court of Appeals.

## II. Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Simply stated, under section 2254(d), Petitioner must show that the state court's decision "was either contrary to, or an unreasonable application of, [the Supreme] Court's clearly established precedents, or was based upon an unreasonable determination of the facts." *Price v. Vincent*, 538 U.S. 634, 639, 123 S.Ct. 1852-53 (2003).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially

6

indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 1523 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413, 120 S.Ct. 1523. A state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)." *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S.Ct. 1029, 1041 (2003).

### III.  Discussion

The issue in this case is whether juror nine was impartial or irreparably prejudiced by receiving unsolicited information, outside of evidence admitted at trial, from her boss about Reginald's conviction and confession during jury deliberations over Petitioner's guilt or innocence. "The Sixth and Fourteenth Amendments to the Constitution guarantee a criminal defendant the right to an impartial jury." *Wolfe v. Brigano*, 232 F.3d 499, 501 (6th Cir. 2000) (citing *Morgan v. Illinois*, 504 U.S. 719, 726-27 (1992)). "Due process does not require a new trial every time a juror has been placed in a potentially compromising situation." *Smith v. Phillips*, 455 U.S. 209, 217 (1982). "Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." *Id.*

> In a criminal case, any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury, is for obvious reasons, deemed presumptively prejudicial . . . . The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant.

*Remmer v. United States*, 347 U.S. 227, 229 (1954) (citations omitted).

7

In this case, the state trial court held a hearing as *Remmer* instructs.  After receiving the note from juror nine which indicated her feeling that outside information had prevented her from making a fair decision, the court found 1) that juror nine did not disobey court instructions while away from jury deliberations and that the information about Reginald came to her inadvertently; 2) that juror nine had not shared the extraneous information with the other jurors; and 3) that juror nine could set aside the extraneous information and continue to deliberate based only upon the information received from the trial.

The question of whether a "juror's protestation of impartiality" should be believed is one of fact.  *Patton v. Yount*, 467 U.S. 1025, 1036 (1984).  A trial court's findings of fact on this issue are presumptively correct under 28 U.S.C. § 2254(d).  *Smith*, 455 U.S. at 218.  Petitioner has not presented evidence that calls into question the trial court's finding that juror number 9 was impartial.

Petitioner argues that the extraneous information was related to a material aspect of the case and was directly connected to the adverse verdict.  Petitioner however presents no argument about the trial court's findings that juror number nine affirmed that she would set aside the extraneous information and decide the case solely on the evidence presented at trial.  As the Supreme Court has stated:

> To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard.  It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

*Irvin v. Dowd,* 366 U.S. 717, 723 (1961) (citations omitted).

In this case, the trial court acted appropriately in questioning the juror as to her ability to

8

set aside the uninvited information from her boss.  In *Patton*, due to pre-trial publicity, a juror stated during voir dire that he would need evidence to overcome his opinion that the defendant was guilty.  *Patton*, 467 U.S. at 1030.  The juror, who was challenged for cause, later stated in response to the question of whether he could set aside his opinion or would need evidence to change it: "I think I could enter it [the jury box] with a very open mind.  I think I could . . . very easily."  *Id.* at 1039.  Another juror, also challenged for cause, said that she could put her opinion of the defendant's guilt aside "if she had to."  *Id.*  The trial court overruled the defendant's challenges and seated the first as a juror and the second as an alternate.  Despite the ambiguous nature of the jurors' responses, the Supreme Court determined that "the ambiguity in the testimony of the cited jurors who were challenged for cause is insufficient to overcome the presumption of correctness owed to the trial court findings [of impartiality]."  *Id.* at 1040.

There was no ambiguity in juror nine's testimony that she could set aside the extraneous information and decide the case solely on the evidence presented at trial.  The trial court was entitled to rely upon her assurances of impartiality.  *Hughes v. United States*, 258 F.3d 453, 459-60 (6th Cir. 2001) (discussing cases in which courts rehabilitate jurors who can expressly disclaim an earlier admission of bias against a defendant).  This case fits easily into the precedent of *Patton*.  The Michigan Supreme Court's decision is entirely consistent with federal law as established by the United States Supreme Court, and is not based upon an unreasonable determination of the facts in light of the evidence presented.  Petitioner is not entitled to habeas relief.

## IV.  CONCLUSION

Accordingly, it is hereby ORDERED that Petitioner's application for a writ of habeas

corpus is DENIED.

                              S/Julian Abele Cook, Jr.
                              JULIAN ABELE COOK, JR.
                              UNITED STATES DISTRICT JUDGE

Date: September 2, 2009

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participant, Jerome Montgomery, Newberry Correctional Facility, 3001 Newberry Avenue, Newberry, MI 49868 on September 2, 2009.

                              s/ Kay Doaks
                              Case Manager